IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**RITA GRAY,**

      **Petitioner,**

v.                                    **Case No. 1:20-cv-00311**

**WARDEN REHERMAN,**
FCI Alderson,

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

On November 18, 2020, Petitioner, Rita Gray ("Gray"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of a prison disciplinary proceeding. (ECF No. 9). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). After fully considering the record, and find no merit to Gray's petition, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's request for dismissal, (ECF No. 11); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 9), and **REMOVE** this matter from the docket of the Court.

**I.**    **Relevant History**

On May 10, 2019, Gray received an incident report at Federal Prison Camp ("FPC") Alderson, accusing her of violating Prohibited Act Code 299 Most Like 296. (ECF No. 11-

1

1 at 9). Her improper conduct was described as "circumvention of the mail monitoring system" used by the Federal Bureau of Prisons ("BOP"). (ECF No. 11-1 at 9.). According to the incident report, between May 5 and May 9, 2019, Gray had engaged in three-way email correspondence with an unidentified inmate at another facility. (*Id.*). The individual corresponding with Gray was determined to be an inmate based on the content of the messages—for instance, the individual discussed his/her incarceration, advising Gray that his/her facility had been on lockdown due to a hunger strike. (*Id.*). The communications were considered "three-way," because Gray was sending her email messages to an email forwarding service that sent them on to the unidentified inmate.

Operations Lieutenant Butler provided Gray with a copy of the incident report at 6:39 p.m. on the day that it was prepared. Lieutenant Butler documented that Gray displayed a good attitude when receiving the incident report. (*Id.* at 10). She was advised of her rights and acknowledged her understanding of them. Gray elected not to make a statement to Lieutenant Butler, however, and did not offer any witnesses to refute the charge. (*Id.*). Therefore, Lieutenant Butler relied on the incident report and found the violation to be justified. (*Id.*). He forwarded the incident report to the Unit Disciplinary Committee ("UDC") for further disposition. (*Id.*).

The UDC considered the charge on May 14, 2019. (ECF No. 11-1 at 9). Gray again declined to make a statement during the UDC hearing. The UDC decided to forward the charge to a Discipline Hearing Officer ("DHO") and provided Gray with a Notice of Discipline Hearing Before the DHO. (*Id.* at 9, 12). Gray indicated that she wished to have a staff representative with her at the hearing, but she did not ask to have any witnesses appear on her behalf. (*Id.* at 12). Gray also received a form setting forth her inmate rights at the DHO hearing, which she initialed and signed, signifying that she understood her

2

rights. (*Id.* at 14).

The DHO held Gray's discipline hearing on July 19, 2019. (ECF No. 11-1 at 16). The DHO confirmed that Gray had received notice of the charge on May 10, 2019, that she was advised of her rights, and that she had discussed the matter with D. Dickerson, Supervisor of Education, who was Gray's staff representative. (ECF No. 11-1 at 16). According to the DHO's report, Gray appeared at the hearing and admitted that she had used a message forwarding service, but denied knowing that the end recipient of her email was another inmate. (*Id.* at 16-17). The DHO also reviewed an email printout from Gray's account. The DHO concluded that, based on the report, the documentary evidence, and Gray's admission, the prohibited act charged had been committed by Gray. (*Id.*). The DHO sanctioned Gray with disallowance of 27 days of Good Conduct Time ("GCT"), placement in least preferred housing for 30 days, and loss of email privileges for 90 days. (*Id.*). Gray was advised of her right to appeal the decision. (*Id.* at 18).

Gray appealed the DHO's decision, asserting that she had not violated BOP policy, because Program Statement ("PS") 4500.12(d) allowed inmates to correspond via public messaging with other inmates, as long as the other inmates accepted the communication. (ECF No. 9-1 at 1). She indicated that if she emailed an individual and the communication was rejected, the BOP was supposed to send a BPA0327 form notifying her that the request for correspondence was denied. (*Id.* at 3). Gray stated that she never received a BPA0327 form, so her behavior was not a prohibited act. Gray's appeal was rejected. (*Id.* at 7). Ian Connors, the BOP's Administrator of National Inmate Appeals, explained that the DHO's decision was supported by evidence and was reasonable. (*Id.*). Connors noted that Gray had received all of her due process rights, and he found the punishment to be commensurate with the severity level of the offense committed. (*Id.*).

3

Gray then filed the instant § 2241 petition, realleging that she did not violate Prohibited Act 299/296, because her email correspondence was approved pursuant to BOP PS 4500.12(d). (ECF No. 9 at 2). Respondent filed a response to the petition on January 15, 2021. (ECF No. 11). Respondent contended that Gray's conduct was not in accordance with PS 4500.12 given that Gray used an email forwarding service to communicate with an unknown individual. Respondent pointed out that the policy prohibits inmates from circumventing the BOP's monitoring of electronic messaging. Respondent emphasized that even if Gray's communication with the message forwarding service was initially approved by the BOP, the ultimate recipient of the email was unknown to the BOP. Consequently, the prohibited act was her use of the email forwarding service to communicate with an unknown third-party. Respondent added that Gray was given full due process rights during the disciplinary process, and the ultimate decision by the DHO was supported by evidence. (*Id.*).

In a reply memorandum, Gray reiterated her contention that she was compliant with PS 4500.12; thus, sanctions were improper. (ECF No. 13). Gray conceded that the disciplinary process, as outlined by Respondent, was followed in her case, but she claimed that the DHO's conclusion was erroneous. In Gray's view, because the BOP allowed her to contact the email forwarding service, and did not reject it by issuing the proper form, the service was an "accepted" contact on her list. Therefore, she did nothing wrong in sending emails to the forwarding service. (*Id.*).

## II. Standard of Review

Respondent asks for dismissal of the petition, but does not identify the standard under which he seeks review and relief. Respondent filed the response concurrently with the request for dismissal. Therefore, the request should be treated as a motion for

4

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion for judgment on the pleadings applies the same standard of review as a motion to dismiss filed under Rule 12(b)(6), and both motions may be filed in habeas actions. (*Id.* at 138–39); *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. (*Id.*) The court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III.  Discussion

As Gray's petition is based on the outcome of a prison disciplinary proceeding, the

Court will consider issues, although not directly raised by Gray, which are relevant; such as, due process and evidentiary support for the DHO's decision to sanction Gray.

### A. *Due Process*

The Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment") protects inmates from deprivations of life, liberty, or property without due process of law. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Gray has a constitutionally protected liberty interest in her GCT, as such time impacts the duration of her sentence. *See, e.g. Marino v. Masters*, No. 1:12-cv-00393, 2015 WL 66511, at *5 (S.D.W. Va. Jan. 5, 2015) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). Accordingly, when a federal prisoner is subject to a disciplinary proceeding that may result in the loss of GCT, the prisoner is guaranteed certain minimal requirements of procedural due process, including:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff,* 418 U.S. at 563–567). The DHO follows a procedure that incorporates these due process protections. *See* 28 C.F.R. § 541.8.

In this case, Gray confirms that her rights under *Wolff* "are not in question." (ECF No. 13 at 8). Indeed, the record reflects that Gray received all of the due process safeguards available to her during the course of the disciplinary process. As such, the undersigned **FINDS** that the disciplinary procedure afforded to Gray comported with due process; therefore, she is not entitled to relief from the DHO's findings based on any alleged deficiencies in conducting the disciplinary proceedings.

### B. *Policy Dispute*

It appears that the crux of Gray's petition is her contention that the BOP approved her use of the email forwarding service by not rejecting her communications with that service. (ECF No. 13 at 8). Accordingly, as the messages that formed the basis of the incident report were between Gray and an "accepted" contact, they could not have violated BOP regulations. Gray also argues that inmate-to-inmate communications are permitted under PS 4500.12.

Gray was charged with Prohibited Act 299 Most Like 296. Prohibited Act 299 is:

> Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.

28 C.F.R. § 541.3. Prohibited Act 296 is:

> Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).

*Id.* As previously indicated, Gray was accused of using an email forwarding service to exchange messages with another inmate, which clearly would be a violation of Prohibited Act 296, if the inmate were not an authorized contact. *Id.* ("sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person.").

In her petition, Gray relies heavily on Program Statement 4500.12, titled "Trust Fund/Deposit Fund Manual." (ECF No. 11-1 at 20-159). Accordingly, a review of the

relevant sections of PS 4500.12 is necessary. Section 14.10 of PS 4500.12 addresses the Trust Fund Limited Inmate Computer System ("TRULINCS"), which is the system Gray used to send and receive the emails in question. (*Id.* at 145). In pertinent part, TRULINCS allows inmates to correspond with other individuals without connecting to the internet and subject to BOP monitoring. Section 14.9 of PS 4500.12 discusses access to the TRULINCS system. At subsection 14.9(b)(1), the statement provides that "inmates who abuse, circumvent, or tamper with TRULINCS … are subject to disciplinary action or criminal prosecution." (*Id.* at 151). The statement further directs that "[i]nmates may only communicate with approved persons on their contact lists." (*Id.* at 152). Inmates are subject to disciplinary action for "any/all attempts to mislead reviewing and monitoring staff as to the true identity and contact information" of a person communicating with the inmate. (*Id.*).

In regard to public messaging, the statement indicates that "[i]nmates may only exchange emails with contacts who have accepted the inmate's request to communicate." (ECF No. 11-1 at 153). As for inmate-to-inmate communication, "[a]n inmate may be permitted to correspond via Public Messaging and postal mail with an inmate confined in any Bureau facility in accordance with the Program Statement **Correspondence**." (*Id.* at 154). In other words, any inmate-to-inmate communications exchanged through TRULINCS must comply with PS 5265.11, entitled "Correspondence." *See* 28 C.F.R. § 540.10—§ 540.25.

Section 14 of PS 5265.11 sets forth the steps that an inmate must take before communicating with another inmate. *See* 28 C.F.R. § 540.17. According to the statement:

> An inmate may be permitted to correspond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family, or is a party or witness in a legal action in which

8

> both inmates are involved. Such correspondence may be approved in other exceptional circumstances, with particular regard to the security level of the institution, the nature of the relationship between the two inmates, and whether the inmate has other regular correspondence. The following additional limitations apply:
>
> (a) Such correspondence at institutions of all security levels may always be inspected and read by staff at the sending and receiving institutions (it may not be sealed by the inmate); and
>
> (b)    (1) The appropriate unit manager at each institution must approve of the correspondence if both inmates are housed in Federal institutions and both inmates are members of the same immediate family or are a party or witness in a legal action in which both inmates are involved.
>
>       (2) The Wardens of both institutions must approve of the correspondence if one of the inmates is housed at a non-Federal institution or if approval is being granted on the basis of exceptional circumstances.

28 C.F.R. § 540.17. It is undisputed that Gray used an email forwarding service to exchange messages with another inmate. Regardless of whether or not the email forwarding service was on her approved contact list, Gray was still required under PS 4500.12 to comply with PS 5265.11 when communicating with another inmate. Therefore, if the inmate with whom Gray corresponded was not an authorized contact, then she violated Prohibited Act 296. Gray did not and has not provided any evidence to establish that she sought and received the proper approval before corresponding with the other inmate. As Gray has the burden to support her petition with the requisite level of proof, the undersigned **FINDS** that Gray's policy argument fails as it is entirely unsupported by fact and law.

Moreover, as Respondent points out, Gray's interpretation of the TRULINCS policy is disingenuous, because her messages were not intended for the forwarding service, but were intended for the ultimate recipient, who was another inmate. As Gray does not supply any proof that the ultimate recipient of the messages was on her approved

9

contact list, the use of the forwarding service was plainly Gray's attempt to circumvent the monitoring and security protections of the TRULINCS system. This is a violation of Prohibited Act 299.

### C. Sufficiency of the Evidence

The final factor for the Court to examine is whether the evidence relied upon by the DHO was sufficient to find Gray guilty of the violation. (ECF No. 1 at 6). To complete the analysis, the Court relies on the evidentiary standard set forth in *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985). In *Hill*, the Supreme Court held that revocation of GCT in a prison disciplinary proceeding does not satisfy the requirements of due process "unless the findings of the prison disciplinary board are supported by *some* evidence in the record." *Id.* at 454 (emphasis added). This standard is "extremely broad in scope and presents a very low burden for prison officials to meet." *Tyler v. Hooks*, 945 F.3d 159, 171 (4th Cir. 2019), cert. denied, 140 S. Ct. 2785 (2020). Nevertheless, "if 'some evidence' is to be distinguished from 'no evidence,' it must possess at least some minimal probative value if it is to be found adequate to satisfy the requirement of the Due Process Clause." *Id.* (quoting *Goff v. Burton*, 91 F.3d 1188, 1192 (8th Cir. 1996)).

The "some evidence" standard provides an extremely limited opportunity for judicial review of prison disciplinary matters. Districts in this circuit have routinely held that the standard is met with minimal evidence. *See, e.g.*, *Masengale v. Streeval*, No. 7:19-CV-543, 2020 WL 4227559 (W.D. Va. July 23, 2020) (holding that "some evidence" standard was met when DHO considered the charging officer's report that contraband was found in the inmate's possession and positive identification of the substances); *Murray v. Tina*, No. 5:18-CT-3026-FL, 2020 WL 1490696 (E.D.N.C. Mar. 24, 2020) (finding that "some evidence" supported disciplinary sanction when shank was found in

10

cell despite inmate's testimony that he did not know the shank was there and it must belong to former occupant); *Edmonds v. Ziegler*, No. 5:10-cv-01374, 2014 WL 321050 (S.D.W. Va. Jan. 29, 2014) (finding that the "some evidence" standard is met when weapon found in cell even when petitioner claimed he had no knowledge of it). "[I]t is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all." *Masengale*, 2020 WL 4227559 at *4.

In this case, BOP staff monitoring the use of TRULINCS discovered Gray engaging in a three-way email exchange with an unidentified inmate at another facility. Gray admitted her involvement in the three-way communication. Although Gray claimed that she did not know the end recipient of her email was an inmate, her claim is undermined by the nature of the messages exchanged. The individual with whom Gray corresponded discussed a lockdown at his/her facility, a hunger strike, and limited access to a computer due to the lockdown, all indications of an individual who is incarcerated. In addition, a TRULINCS print-out of Gray's emails was provided as documentary evidence of the impermissible exchanges. Consequently, the evidence against Gray was significantly more robust than that required by the "some evidence' standard.

Therefore, the undersigned **FINDS** that the evidence used by the DHO was sufficient to find that the act was committed as charged, and Gray is not entitled to relief from the DHO's finding.

### IV.    Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Gray's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 9), be

**DENIED,** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** March 22, 2021

Cheryl A. Eifert
United States Magistrate Judge